## GLEATON v. GIBSON.

1. In 1867, real property was conveyed to a married woman for life, to her sole and separate use. Under the powers of disposition conferred upon married women by the act of 1870 (14 Stat., 325) and while that act was of force she could execute a valid mortgage upon this property to pay another's debt. This is not giving to that statute any retroactive operation.

2. This case distinguished from *Rabb* v. *Flenniken, ante* 278.

3. If foreclosure be refused upon a ground affecting only the mortgage, the court may, in the same action, give an ordinary judgment for the debt due.

Before ALDRICH, J.; Orangeburg, September, 1887.

This was an action by Morgan L. Gleaton against Martha A. Gibson, commenced December 9, 1886. The opinion states the case.

*Messrs. Lathrop & Wannamaker*, for appellants.

*Messrs. Izlar & Glaze*, contra.

November 5, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On the 18th of November, 1867, one Joseph A. Kennerly executed a deed for the tract of land which is the subject of the present controversy, to the defendant, the wife of J. Lewis Gibson, "for and during the term of her natural life (to her sole and separate use, and not subject, during her said life, to the debts, contracts, or engagements of her present, or any future, husband), and from and immediately after her death then unto such of her children by the said J. Lewis Gibson as may be then alive, to be equally divided," &c. On the 23d of November, 1881, the defendant executed a mortgage on the said tract of land to the plaintiff to secure the payment of a debt due by her husband to the plaintiff, and on the 9th December, 1887, this action was commenced to foreclose said mortgage, the complaint being in the usual form. The defence was based upon two grounds: 1st. That the defendant being a married woman at the time had no power to give a mortgage on the land conveyed to her by the Kennerly deed prior to the adoption of the present constitution and the married woman's act of 1870, which was the law on that subject at the time of the execution of such mortgage. 2nd. That on the 29th of November, 1884, two of the sons of defendant executed to the plaintiff their note and mortgage in place of the note and mortgage of defendant upon which this action is based, and that the same was received by plaintiff in full payment and satisfaction of the present claim against the defendant.

All the issues in the action were referred to the master, who made his report, finding, as matter of fact, that the note and mortgage of the two sons were not given in satisfaction of the note and mortgage of defendant, but merely as additional

security; and, as matter of law, that the defendant did have power to execute the mortgage given by her; and having computed the amount due, he recommended that the plaintiff have judgment of foreclosure, and that the life estate of the defendant in the land be sold. To this report defendant excepted on two grounds: 1st. Because of error in the finding of fact that the note and mortgage of the two sons were given merely as additional security, and not as satisfaction of defendant's note and mortgage. 2nd. Because of error of law in finding that the defendant had power to give the mortgage in question.

Upon this report and exceptions the case was heard by his honor, Judge Aldrich, who sustained the second exception, and holding that this ruling disposed of the case, rendered judgment "that the report of the master herein be vacated and set aside, and that the complaint of the plaintiff be dismissed with costs." From this judgment plaintiff appeals upon the several grounds set out in the record, which substantially assign the following errors: 1st. In sustaining defendant's second exception to the master's report. 2nd. In omitting to overrule defendant's first exception. 3rd. In refusing to render judgment for the amount ascertained by the master to be due on the note of the defendant.

The mortgage here brought in question having been executed after the passage of the act of 1870, and prior to the amendment of 1882, its validity must be determined by the law in force at the time, and not by the law as it now stands. Hence the case of *Aultman & Taylor Co.* v. *Rush* (26 S. C., 517), and the other cases following that decision, have no application to the present controversy. Looking at the question in the light of the law as it stood at the time the mortgage here in question was executed, it must be regarded that under the cases of *Pelzer, Rodgers & Co.* v. *Campbell & Co.* (15 S. C. 581), *Witte* v. *Wolf* (16 *Id.*, 256), *Witte Bros.* v. *Clarke* (17 *Id.*, 313), and others of that class, that the defendant, though a married woman at the time, had full power to execute this mortgage.

Indeed, we understand this general proposition to be conceded by the counsel for respondent; but he contends that inasmuch as the land which the defendant undertook to mortgage was acquired by her before the adoption of the constitution and before the

passage of the act of 1870, the provisions of neither the act nor the constitution can be applied here without a violation of the rule in regard to retrospective legislation. On the contrary, he insists that the powers which the defendant, being a married woman, had over this property must be looked for only in the law as it stood at the time she acquired it, unaffected by any subsequent changes therein, whether effected by constitution or statute; and inasmuch as it was then the settled law of this State that where property was given or settled to the separate use of a married woman, she had no power to charge, encumber, or dispose of it, except in so far as power so to do had been conferred upon her by the instrument creating such estate: and inasmuch as the deed from Kennerly, under which the defendant acquired this land, conferred no power upon her to mortgage it, counsel earnestly argues that such power must now be denied to her.

There can be no doubt that it is the well settled rule that a statute will not be construed as having retroactive operation unless the intention that it shall so operate be clear beyond all reasonable doubt (*Ex parte Graham*, 13 Rich., 277, and the authorities there cited), and there is as little doubt that there is nothing in the act of 1870 indicative of such an intention. We say the act of 1870, because we think it must now be regarded as settled by the case of *Aultman* v. *Rush*, *supra*, and others of that class, that the power of a married woman to make a mortgage of real estate was derived from that act, and not from the constitution. If, therefore, the mortgage now in question had been executed prior to the passage of that act, there can be no doubt that to apply its provisions to such transaction would violate the rule with respect to retrospective legislation. But that is very far from what it is proposed to do here. So far as the present inquiry is concerned, the act of 1870 simply conferred additional powers upon a married woman, and the question here is whether, *after such additional powers have been conferred*, she may not exercise them as well over property previously owned as over that subsequently acquired. We can see no reason why she may not. There is nothing retroactive in such a construction of the act. It does not purport to validate a transaction which was invalid at the time it was entered into, nor does it attempt

to confer the right to do an act after the act has been done; but the effect is simply to enlarge the power of disposition which a certain class of owners had over their property, without distinction as to the time when the right of ownership had accrued.

Of course, such additional power could not be exercised to the detriment of the vested rights of others, upon the very obvious principle that the legislature has no right to confer upon one person the power to dispose of the property of another. But where the vested rights of others are not involved, we cannot see how legislation conferring additional powers of disposition upon the owner of property can, in any sense, be regarded as retrospective legislation. We need not, however, argue this point, as it has been distinctly decided in two cases, *Witsell* v. *Charleston*, 7 S. C., 88, and *Witte Bros.* v. *Clarke*, 17 *Id.*, 313. In both of these cases the marriages were contracted and the property had been acquired prior to the passage of the act of 1870, and, indeed, before the adoption of the constitution, and the doctrine which we apply here was applied in both of those cases. It is true that in those cases personal and not real property was involved, but we are unable to perceive how this difference in the character of the property can affect this particular question.

This case differs very materially from the recent case of *Rabb* v. *Flenniken, ante,* for in that case the power of disposition was limited by the terms of the deed creating the estate to a single purpose—reinvestment—and hence it was held that such power could not be exercised for any other purpose. In that case the limitation of the power of disposal was not found in the fact that the deed was executed in December, 1867, prior to the adoption of the constitution, and, of course, before the passage of the act of 1870; nor was it found in the fact that the property was conveyed to the sole and separate use of the wife, during her life, not subject to the debts of her husband, with remainder to her children; but it was found only in the fact that by the terms of the deed itself the power of disposition or alienation was given only for the purpose of re-investment, and therefore could not be exercised for any other purpose, and the Chief Justice clearly points out the distinction, in that respect, between the case of *Witsell* v. *Charleston*, where there was nothing in the terms of

the deed prescribing the purpose for which an alienation could be made, and the case he was then considering, *Rabb* v. *Flenniken*, where the deed did contain such a provision.   The same distinction also exists between the case now under consideration and that of *Rabb* v. *Flenniken*.   It seems to us, therefore, that the Circuit Judge erred in holding that the defendant had no power to execute the mortgage which the plaintiff seeks by this action to foreclose, and that upon this ground the judgment below must be reversed.

The next inquiry is whether the Circuit Judge erred in failing to overrule defendant's first exception to the master's report. Under the view taken by Judge Aldrich of the second exception it did not seem to him necessary to consider the question raised by the first exception, and, therefore, as we understand it, he made no ruling either one way or the other in regard to that exception.   He seems to have proceeded upon the view contended for here by the counsel for respondent, that, under an action to foreclose a mortgage of real estate, if the mortgage proves to be invalid, no judgment can be rendered in such an action, for the debt intended to be secured by such mortgage, even though the same may be established; but in such case the plaintiff must be remitted to his ordinary action, on the law side of the court, on the note or other obligation which such invalid mortgage was intended to secure.   Under the case of *Salinas & Son* v. *Ellis* (26 S. C., 337), we do not think this view can be sustained.   In that case the plaintiff brought an action in the ordinary form to foreclose a mortgage of real estate, alleging that by a subsequent agreement another note, not mentioned in the mortgage, for $150, should be secured by the mortgage.   The defence was that the lien of the mortgage had been discharged by a tender of the debt originally specified in the mortgage, and that the note for $150 was not covered by the mortgage.   The master found as matter of fact that there was no agreement that the $150 note should be secured by the mortgage, and that the tender relied on was conditional and therefore insufficient.   He accordingly recommended that the plaintiff have judgment of foreclosure for the original debt mentioned in the mortgage, and simple judgment for the $150 note.   The Circuit Judge affirmed

the report, rendering judgment as recommended by the master. Upon appeal this court reversed the ruling below as to the tender, holding that the lien of the mortgage was thereby discharged, but that, nevertheless, the plaintiff was entitled to an ordinary judgment, not only for the amount of the debt specially mentioned in the mortgage, but also for the $150 note, though it was error to render judgment of foreclosure. We think, therefore, that the Circuit Judge, even after holding the mortgage void, should have proceeded to consider and determine the question whether the debt intended to be secured by such mortgage had been discharged by the note and mortgage given by defendant's sons.

The judgment of this court is that the judgment of the Circuit Court be reversed and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.